Vincent A. GRIFFIN

v.

CHRYSLER CREDIT CORPORATION.

Supreme Judicial Court of Maine.

Argued Nov. 7, 1988.
Decided Jan. 27, 1989.

James W. Strong (orally), Strout, Payuson, Pellicani, Hokkanen, Strong & Levine, Rockland, for plaintiff.

Stephen E. Langsdorf (orally), Preit, Flaherty, Beliveau & Pachios, Augusta, for defendant.

Stephanie E. Lugg, Richard P. Hackett, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, for amici curiae, Marue Bankers Assoc. and Savings Bank Assoc. of Maine.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

HORNBY, Justice.

This dispute requires us to examine the notice of default and right to cure provisions of the Maine Consumer Credit Code. 9-A M.R.S.A. §§ 5-110 through 5-112 (1980 & Supp.1988). We conclude that a creditor may satisfy its statutory obligation by mailing the notice to the consumer's residence, regardless of whether it is received, and that prior to the 1985 amendment, a creditor was required to give only one notice of right to cure with respect to any given credit obligation.

In December of 1982, Vincent A. Griffin ("Griffin") bought a 1983 Plymouth Reliant from Eaton Chrysler Plymouth in Rockland. Griffin financed his purchase through Chrysler Credit Corporation ("Chrysler"). Under the retail installment contract Griffin agreed to make 48 monthly payments of $202.41 by the 10th day of

each month, with a 15 day grace period before any late charges were assessed. When Chrysler did not receive the October 1983 payment from Griffin, it sent a notice of default and right to cure to Griffin's home address by regular mail on November 3, 1983. Chrysler has a U.S. Postal certificate to prove the mailing. The total charge listed on the notice was $232.77, reflecting $30.36 in late fees. The notice stated that if full payment were received by November 28, 1983, Griffin could "continue with the contract as though you were not late." On November 7, 1983, Griffin paid $202.41. Throughout the following 15 months, Griffin continued to be late in his payments. According to Griffin, in late January or early February of 1985, a Chrysler representative phoned him and informed him that his payment record was unacceptable and that perhaps he "needed to be taught a lesson." On February 12, 1985, Chrysler repossessed the car.

Griffin sued Chrysler alleging that Chrysler breached the retail installment contract and violated provisions of the Maine Consumer Credit Code by repossessing the car. Chrysler moved for partial summary judgment, but its motion was denied. During the trial, Griffin testified that he never received the November 3, 1983 notice of default and right to cure from Chrysler. The jury found that Chrysler did mail the notice but that Griffin did not receive it; that Griffin was in default under the contract; that Chrysler breached the contract in repossessing the car; and that Chrysler willfully trespassed on Griffin's property and converted his property in repossessing the car. The jury awarded $1000.00 in statutory damages; $3,000.00 for willful trespass and conversion, trebled to $9,000.00 under 14 M.R.S.A. § 7552 (1980 & Supp.1988); and $10,000.00 in punitive damages. Chrysler appeals the Superior Court (Knox County; *Delahanty, J.*) judgment on the verdict. We vacate the judgment.

### Summary Judgment

▪ We decline Chrysler's invitation to address the correctness of the denial of its motion for partial summary judgment. We have consistently held that denial of a motion for summary judgment is not a proper subject for appellate review when the case has proceeded to trial on its merits. *Nordic Sugar Corporation v. Maine Guarantee Authority*, 447 A.2d 1239, 1240–41 (Me. 1982); *Bigney v. Blanchard*, 430 A.2d 839, 842 (Me.1981).

### Statutory Issues

▪ Chrysler challenges the following jury instruction concerning the effect of mailing the notice of default and right to cure:

In this case there was evidence that a notice was mailed or the right to cure was mailed by the Defendant on November 3, 1983. And under our law a post office department certificate of mailing to the Plaintiff is conclusive proof of the receipt of the notice of the consumer's right to cure on the third day after mailing. And I instruct you that conclusive proof means that you can find that Mr. Griffin received that notice without any further evidence.

However, this is what they call a rebuttable presumption. Mr. Griffin can offer other evidence, contrary evidence. And then it is up to you to decide which is correct under the circumstances.

The jury found that the notice was mailed but not received.

The Maine Consumer Credit Code provides that "a creditor gives notice to the consumer under this section by mailing the notice to the consumer's residence." 9–A M.R.S.A. § 5–110(1) (1980 & Supp.1988). The statute also provides definitions of when notice is deemed to be given. For example, if certified mail, return receipt requested, is used, "the date the consumer signs the receipt" governs. Section 5–110(1)(A) (1980 & Supp.1988). In the case of ordinary mail, on the other hand, "the time when notice is given shall be the date the consumer receives it. A post office department certificate of mailing to the consumer shall be conclusive proof of receipt on the 3rd calendar day after mailing." 9–A M.R.S.A. § 5–110(1)(B) (1980 &

Supp.1988). Here Chrysler provided a post office department certificate of mailing and thus was entitled to the benefit of the statute: "conclusive proof of receipt on the 3rd calendar day." The issue, therefore, is whether "conclusive proof" of receipt means only a *presumption* of receipt that can be rebutted.

The statute defines when notice of default is given for an obvious reason: to provide creditors with a date certain from which to count the debtor's 20 (now 14) day time limit for curing the default. 9–A M.R. S.A. § 5–111(1) (1980 & Supp.1988). The Maine Consumer Credit Code imposed a dramatically new set of requirements on creditors when it went into effect in 1975. It is not surprising that, having prevented a creditor from protecting its interests until 20 days after giving notice of a right to cure a default, the Legislature thought it advisable to create a method by which a creditor could know with certainty when the 20 days had run. "[C]onclusive proof" provides that certainty. Changing "conclusive proof" to a rebuttable presumption as the trial court did here, on the other hand, prevents a creditor from knowing when the 20 days start to run if it uses ordinary mail, for it has no way to know when the mail was received. This interpretation of the statute would eliminate the use of ordinary mail as a practical matter, a result at odds with the clearly given statutory choice of certified mail or ordinary mail. Moreover, the drafters obviously contemplated that notices might not always be received, for they provided in the case of certified mail that if the notice was undeliverable, the time of giving notice was "the date the post office last attempts to deliver it." 9–A M.R.S.A. § 5–110(1)(A) (1980 & Supp. 1988). This provision parallels the "conclusive" effect of the certificate of mailing. We find no constitutional defect in a "conclusive" effect. Before the Legislature enacted the Consumer Credit Code consumers had no right to any notice of default and right to cure. In extending new rights to consumers, the Legislature was free to require only that such a notice be mailed, not that it necessarily be received. We conclude that the words "conclusive proof"

mean exactly what they say. Here, Chrysler provided a post office department certificate of mailing, and the jury found that Chrysler sent the notice. It was therefore reversible error to permit the jury simultaneously to find that Griffin did not receive the notice. Under the statute, that issue should not have gone to the jury.

■ Griffin argues, however, that the November 1983 notice is insufficient to support the February 1985 repossession because, under the statute, "[c]ure restores the consumer to his rights under the agreement as though the defaults had not occurred." 9–A M.R.S.A. § 5–111(1) (1980 & Supp.1988). He maintains that his November 7, 1983 payment of $202.41 amounted to "cure" and thus required a new notice of default and right to cure before repossession. Without resolving whether Griffin had to pay the additional late charges in order to cure, we conclude that the statute did not entitle him to a second notice. Although the current version of the statute requires a new notice after 12 months, 9–A M.R.S.A. §§ 5–110(2) & 5–111(2) (Supp. 1988) the former statutory language (applicable to this transaction) was clear:

> With respect to defaults on the same obligation ..., after a creditor has *once* given a notice of consumer's right to cure, as provided in section 5–110, this section gives the consumer no right to cure and imposes no limitations on the creditor's right to proceed against the consumer or goods that are collateral.

9–A M.R.S.A. § 5–111(2) (1980) (emphasis supplied). If there were any doubt that only one notice was required, section 5–110(2) removed it in delineating the contents of a satisfactory notice:

> A notice in substantially the following form complies with this subsection:
>
> *     *     *     *     *     *
>
> If you are late again in making your payments, we may exercise our rights *without sending you another notice like this one.*

9–A M.R.S.A. § 5–110(2) (1980) (emphasis supplied). We conclude, therefore, that the statute obligated Chrysler to send Griffin

only one notice, and that Griffin was entitled to no statutory recovery.

### Contractual Rights

▮ The question remains whether Griffin's damage award for willful trespass and conversion can stand. Chrysler had to enter Griffin's property (not his dwelling) to repossess the car. Unless Chrysler had a legal justification for entering the property and taking the car, the jury could find it guilty of both trespass and a conversion. Chrysler's only source of justification lies in its contract with Griffin. The contract provides:

> If Buyer defaults in any payment and which remains unpaid for more than 10 days after the original or deferred due dates or fails to comply with any of the terms or conditions of this contract, ... Creditor shall have the right, at its election, if Buyer fails to cure the default within 20 days after Notice of Default and if such act or failure to act materially impairs the condition, value or protection of Creditor's rights in the vehicle or materially impairs Buyer's ability to pay amounts due hereunder, to declare the unpaid portion of the Total of Payments under this contract ... to be immediately due and payable and may exercise any of Creditor's remedies as provided herein. In any such event, Creditor, its agents or representatives, may enter the premises where the property may be and without the use of force or other breach of the peace, take immediate possession of the property including any equipment or accessories.... Waiver by Creditor of any default shall not be deemed a waiver of any other default.

The trial judge instructed the jury on this subject as follows:

> You are instructed that the contract provides in part that is pertinent to your consideration that the Defendant could not enforce the agreement with respect to default unless you find that the Plaintiff Mr. Griffin defaulted in any payment which remained unpaid for more than 10 days after the original or the deferred due date. And unless you further find that the Plaintiff's default materially impaired the condition, value or protection of the Defendant's right in the vehicle or materially impaired the Plaintiff's ability to pay the amounts under the contract.
>
> Unless you find that both conditions existed you are instructed that the Defendant is not entitled to declare the unpaid portion of the debt immediately due and payable and the Defendant was not entitled to repossess the vehicle.

At another point, the trial judge also instructed the jury that Chrysler could repossess the car only if Griffin failed to cure his default within 20 days after Chrysler sent (and, by virtue of the earlier instruction, Griffin received) the notice of a right to cure. The trial judge also stated that if Griffin cured, Chrysler could not repossess unless Griffin defaulted again, Chrysler sent out a new notice, and Griffin then failed to cure.

Thus, the jury could have found that Chrysler had no contractual justification for its entry and seizure because

(1) Chrysler's rights in the car and Griffin's ability to pay were not materially impaired;[1] or

(2) Griffin never received the November, 1983, notice and thus the 20 days for cure never ran; or

(3) Griffin cured the November, 1983 default and Chrysler failed to send a second notice after the new default.

Grounds (2) and (3) are improper for the reasons already discussed,[2] and we cannot

---

1. Chrysler does not argue that the material impairment requirement is inapplicable to a payment default.

2. The parties have not argued the terms of the contract on these issues. We observe, however, with respect to (2) that the contract provides that notice is sufficient, "if mailed to the address of Buyer set forth in this contract or the last address furnished by Buyer to Creditor." *See*

*St. Pierre v. North East Ins. Co.*, 471 A.2d 1049, 1052 (Me.1984) ("in its ordinary meaning, 'mailed' means only that the sender has placed the item into the postal system"). With respect to (3), the contract arguably contemplates a new notice for each default if a previous default has been cured. The question remains, however, whether the November default was ever cured since the late charges were not paid. The trial

be certain that they were not the basis for the jury's decision that Chrysler had no contractual basis to repossess the car. The award for trespass and conversion, therefore, cannot stand. We do not reach the issue whether punitive damages could properly be awarded.

The entry is:

Judgment entered for the defendant on the statutory damages claim; judgment vacated on the trespass, conversion and punitive damages claims and remanded for further proceedings. The plaintiff's application for attorney fees on appeal is denied.

All concurring.

judge instructed the jury that the late charges must be paid to effect the cure, and the matter

has not been pursued here.