2007 ME 22

**Yim K. CHEUNG**

v.

**Wing Ki WU et al.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Sept. 14, 2006.

Decided: Feb. 1, 2007.

James E. Mitchell, Esq., Jim Mitchell and Jed Davis, P.A., Augusta, for plaintiff.

G. Charles Shumway, Esq., Childs, Rundlett, Fifield, Shumway & Altshuler, LLC, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CLIFFORD, J.

[¶ 1] Yim K. Cheung appeals from a judgment entered in the District Court (Augusta, *Studstrup, J.*). The court found that Wing Ki Wu and Cindy Wu owe damages to Cheung for their default on a promissory note given to Cheung in payment for the purchase of stock in a restaurant, but also found that Cheung's recovery from the Wus was limited by what the Wus proved to support their affirmative defenses of recoupment. The court also denied Cheung's request for attorney fees. Cheung contends that the court erred by denying his motion for summary judgment; allowing the Wus to pursue the unpleaded affirmative defense of recoupment; and denying Cheung's request for attorney fees, as provided under the terms of the promissory note and the contract, and pursuant to M.R. Civ. P. 37(c). We agree in part with Cheung's contentions, vacate the judgment with respect to attorney fees, and remand for further proceedings.

## I. BACKGROUND

[¶ 2] On September 20, 1999, Yim K. Cheung entered into an agreement with Wing Ki Wu whereby Wing Ki agreed to purchase the stock in Cheung's corporation, Cheung Lee Garden, Inc., d/b/a Canton Village, the terms of which were set forth in a stock purchase agreement signed by Cheung and Wing Ki, with the closing scheduled to take place on October 1, 1999. The purchase price was set at $145,000, with $95,000 of this amount to be paid pursuant to the terms of a promissory note, given to Cheung by Wing Ki and his wife, Cindy, in thirty-six monthly installments of $2933.32, with an interest rate of seven percent accruing annually.

[¶ 3] It is undisputed that the Wus paid their monthly installments on time until the payment due January 1, 2002, at which time they paid only $2693.22. Cheung received no further payments thereafter. The Wus contended that they made no further payments because they were forced to pay for numerous liabilities that accrued prior to October 1, 1999, for which Cheung was responsible and which he had failed to disclose, and therefore they were entitled to reduce the amount payable on the note.

[¶ 4] The promissory note states:

This note is given in connection with a certain Stock Purchase Agreement and Security Agreement of even date. The terms of said Agreements are incorporated herein by reference and a default in the terms of either Agreement shall also be a default of this note upon which the full sum shall become due and payable at the option on the Holder.

The stock purchase agreement provides:

*No undisclosed liabilities.* Except for liabilities and obligations incurred in the ordinary course of business, neither the corporation nor any of the property of the corporation is subject to any material liability or obligation not heretofore disclosed to the Purchaser. All [accounts] payable, bills or charges of Cheung Lee Garden, Inc. incurred prior to October 1, 1999 shall be the sole responsibility of Yim K. Cheung. All [accounts] payable, bills or charges of Cheung Lee Garden, Inc. incurred after October 1, 1999 shall be the sole responsibility of Wing Ki Wu.

[¶ 5] The note contains an acceleration clause stating that Cheung may declare due and payable at once the entire balance of principal and interest accrued without further notice or demand upon default, including a default in payment due on the note that is continued for thirty days. The note further provides that "[i]n the event of default in the terms hereof, the undersigned agree to pay all costs and expenses, including reasonable attorney's fees incurred by the Holder of this note in any legal proceedings arising from or connected with the enforcement of this note."

[¶ 6] Cheung filed a complaint against the Wus alleging that they had been in default on the note for thirty days. The complaint demanded payment of the full balance due on the note ($25,885.67), as well as reasonable attorney fees as provided by the note. The Wus answered the complaint, and denied that they were in default on the note, but did not assert any affirmative defenses.

[¶ 7] Cheung served on the Wus' attorney a single request for admissions addressed to both Wing Ki and Cindy. Only Cindy signed the response to the request for admissions, and neither Wing Ki nor their attorney separately signed a response to the request for admissions.

[¶ 8] The District Court (*French, J.*) held a pretrial conference and issued an order, stating that the issue in the case was "has the promissory note been paid." Cheung filed a motion for summary judg-

ment against Wing Ki and for partial summary judgment against Cindy, supported by a statement of material facts, and affidavits of Cheung and his attorney. In his affidavit and statement of material facts, Cheung admitted that he had failed to pay some of the bills the Wus claimed were owed by him, totaling $856.42. In response, the Wus filed an opposing statement of material facts supported by an affidavit of Cindy. Twenty-seven of the thirty-eight opposing statements of material facts failed to appropriately begin with the designation "Admitted," "Denied," or "Qualified." *See* M.R. Civ. P. 56(h)(2).

[¶ 9] The District Court (*Perry, A.R.J.*) denied Cheung's motion for summary judgment, and rejected Cheung's argument that Wing Ki had admitted all of Cheung's requests for admissions by failing to sign the response to the request for admissions. The court acknowledged that the Wus improperly controverted Cheung's statement of material facts, but did not allow those statements to be used against the Wus.

[¶ 10] Cheung then filed a motion requesting a pretrial conference, again objecting to the use of the unpleaded affirmative defense of payment. The District Court (*Vafiades, C.J.*) held a pretrial status conference, and issued a pretrial order that allowed "the defendant to plead payment as an affirmative defense."

[¶ 11] At trial, after putting on one witness, Cheung made a motion for judgment as a matter of law pursuant to M.R. Civ. P. 50(d), based on the failure of the Wus to plead an affirmative defense. The Wus argued that, by denying similar motions based on the Wus' failure to plead an affirmative defense, the court had allowed the affirmative defense to become part of the case. The court stated that the Wus'

position "is correct, that although not previously [pleaded], for whatever reason, the Court has allowed that pleading orally at the time of the conference and so payment remains an issue, and for that reason I'll deny the motion for judgment as a matter of law."

[¶ 12] The court permitted the Wus to file a post-trial brief, in which they argued for equitable subrogation and setoff or recoupment, to reduce or cancel any debt they may owe to Cheung by virtue of the promissory note taken in payment for the corporation. The court found that the Wus were in default on the promissory note, and entered judgment in favor of Cheung in the amount of $25,646.27 plus interest and court costs. The court further held, however, that pursuant to the principal of recoupment, Cheung's recovery was to be reduced by $11,434.57, representing the liabilities and obligations incurred by the corporation prior to October 1, 1999, for which Cheung was responsible. The court did not grant Cheung attorney fees because it was Cheung who first breached the contract and "the [Wus] also have their own attorney's fees."

[¶ 13] Cheung moved for findings of fact and conclusions of law and to reconsider. The court issued its findings and decision on the motion, and denied reconsideration of its decision allowing the Wus to assert and litigate the affirmative defense of recoupment. The court also denied any award of attorney fees pursuant to the note.[1] Cheung filed this appeal.

## II. DISCUSSION

### A. Denial of Motion for Summary Judgment

[¶ 14] Cheung contends that the court erred when it denied his motions for sum-

---

1. The trial court did not address Cheung's request for attorney fees pursuant to M.R. Civ. P. 37.

mary judgment: (1) with respect to Wing Ki by denying Cheung the right to use facts against Wing Ki when Wing Ki failed to reply to Cheung's request for admissions; and (2) with respect to both of the Wus, by denying Cheung the right to use facts that were not properly controverted by the Wus in their response to Cheung's motion for summary judgment.

[¶ 15] "We have consistently held that the denial of a motion for summary judgment is not a proper subject for appellate review where, as here, the case has proceeded to trial or hearing on the merits." *Estate of Galluzzo,* 615 A.2d 236, 238 (Me.1992). "If, however, the reasons for seeking summary judgment remain after a hearing on the merits, the moving party may reassert his entitlement to a judgment in his favor by filing an independent motion for judgment as a matter of law pursuant to M.R. Civ. P. 50(d), the denial of which is a proper subject for appellate review." *Id.* at 239. Although a motion for judgment as a matter of law "may be made at any time on any claim," M.R. Civ. P. 50(d), a "[f]ailure to renew the motion at the close of all of the evidence operates as a waiver of the prior motion and precludes appellate review." *Bigney v. Blanchard,* 430 A.2d 839, 842 (Me.1981).

[¶ 16] Cheung moved for judgment as a matter of law pursuant to Rule 50 at the beginning of the proceeding, but he did not renew the Rule 50(d) motion at the close of the Wus' evidence, nor did he raise the issues presented in the original motion for summary judgment in his motion to reconsider. Thus, because he did not renew the motion for judgment as a matter of law at the close of all of the evidence, the issues raised in the motion for summary judgment are not preserved for appellate review. *See id.*

## B. Defense of Recoupment

[¶ 17] Cheung argues that the court erred when it determined that the Wus are entitled to the defense of recoupment, because recoupment is an affirmative defense, and no affirmative defenses had been pleaded. The Wus contend that their attorney orally requested permission of the court to amend their answer to the complaint to include the defense of payment or setoff and that, in response, the court issued a pretrial order indicating that the issues for trial included a statement that "the court has allowed the defendant to plead payment as an affirmative defense."

[¶ 18] Pursuant to M.R. Civ. P. 16A, which governs pretrial procedure in the District Court, following a pretrial conference, the court must "make an order which recites . . . the amendments allowed to the proceedings . . . and which limits the issue for trial . . .; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." Thus, issues raised in a pretrial order supersede issues raised in the pleadings. *Steinberg v. Elbthal,* 463 A.2d 731, 733 (Me.1983). This prevents a party from being prejudiced by the later introduction of issues not raised in the pretrial orders. *Id.* at 734. Furthermore, the trial court has the authority to interpret and clarify its own prior orders, *Raymond v. Raymond,* 480 A.2d 718, 722 (Me.1984), including pretrial orders, and we will defer to those judgments.

[¶ 19] Recoupment is a defense that must be pleaded affirmatively, and if it is not raised it is ordinarily deemed not preserved. *See Inniss v. Methot Buick–Opel, Inc.,* 506 A.2d 212, 217 (Me.1986). "[A] 'recoupment' is a reduction of part of the plaintiff's damages because of a right in the defendant arising out of the same

transaction." *Id.* From the outset of the proceedings, Cheung was on notice that the Wus' defense was that they could offset the payments due on the note by the amounts that they had paid to third parties that were the responsibility of Cheung pursuant to the terms of the stock purchase agreement. Cheung's own motion for summary judgment concedes that the amount owed on the note could be reduced by what Cheung admitted to owing the Wus, albeit a much smaller amount than claimed by the Wus.

[¶ 20] Moreover, two separate pretrial orders state that the Wus were given permission to proceed with an affirmative defense predicated on a "payment" theory. Although Cheung correctly asserts that the defense of recoupment is not technically the same as payment or setoff, *see id.,* the court neither erred nor acted beyond its discretion when it interpreted and clarified the pretrial orders, which allowed the defense of payment, to include an equitable defense relating to whether the Wus had paid for numerous items that were Cheung's responsibility pursuant to the terms of the agreement.[2]

[¶ 21] Although Cheung objected to the court's consideration of an issue not expressly pleaded, he was on notice, before trial began, that the trial court considered as a central issue in the case whether Cheung had breached the stock purchase agreement by failing to pay various bills assigned to him pursuant to the express terms of the agreement. The issue was fully tried. Both parties acknowledged the unpleaded issue during trial, and submitted substantial evidence with respect to each of the separate bills that the Wus

claimed were Cheung's responsibility. In the circumstances of this case, the defense of recoupment was properly considered by the trial court.

### C. Attorney Fees

[¶ 22] Cheung also contends that he is entitled to attorney fees, as provided by the terms of the promissory note. The note provides:

> In the event of a default in the terms hereof, the undersigned agree to pay all costs and expenses, including reasonable attorney's fees incurred by the Holder of this note in any legal proceeding arising from or connected with the enforcement of this note or the mortgage which is security from this note.

[¶ 23] The Wus do not contest the court's finding that they were in default on the note. Rather, they argue that the court did not err by applying equitable principles to determine that Cheung is not entitled to recover attorney fees pursuant to the note, because it was Cheung who first breached the stock purchase agreement, which is part of the integrated transaction encompassing the note, and because the Wus had their own attorney to pay.

[¶ 24] We review determinations pertaining to attorney fees for abuse of discretion, *see Bangs v. Town of Wells,* 2003 ME 129, ¶ 7, 834 A.2d 955, 958; the interpretation of a contract provision, however, is a legal issue that we review de novo, *see QAD Investors, Inc. v. Kelly,* 2001 ME 116, ¶ 13, 776 A.2d 1244, 1248. As a general rule, courts must enforce

---

**2.** We have affirmed a judgment that a contract was unenforceable due to mutual mistake when this defense was not specifically pleaded nor mentioned in a pretrial order, but the "the presiding justice put the parties on notice that he considered the fundamental issue in the case to be the Plaintiff's understanding at the time of contract as to the preconditions for completing the subdivision." *DiBiase v. Universal Design & Builders, Inc.,* 473 A.2d 875, 877 (Me.1984).

contract provisions that require the payment of attorney fees, so long as they are reasonable. *St. Hilaire & Assocs., Inc. v. Harbor Corp.*, 607 A.2d 905, 906–07 (Me. 1992); *see also Remarc Homes, Inc. v. Kumar*, 616 So.2d 498, 499 (Fla.Dist.Ct. App.1993) (holding "[g]enerally, with few exceptions, an attorney's fee provision in a contract cannot be ignored and courts have no discretion to decline to enforce contract provisions for awards of attorney's fees"); *Teche Bank & Trust Co. v. Willis*, 631 So.2d 644, 646 (La.Ct.App.1994) (holding that although courts must enforce contractual attorney fee provisions, they must also inquire into the reasonableness of stipulated attorney fees); *Pearson v. Sigmund*, 263 Or. 626, 503 P.2d 702, 706 (1972) (holding that "[b]ecause of the contract provision for attorney fees to the prevailing party ... the trial court had no right to disregard the terms of the contract and was required to allow reasonable attorney fees to defendants as the prevailing parties in this case"); *Cobabe v. Crawford*, 780 P.2d 834, 836 (Utah Ct.App.1989) (holding that provisions in written contracts for attorney fees must ordinarily be honored and that the court does not possess the same equitable discretion to deny such fees). The question before us is whether, under the facts of this case, the court may invoke its equitable powers and not enforce any part of a contractual provision for attorney fees when the party seeking to enforce the provision has also breached the contract.

[¶ 25] In *St. Hilaire*, we held that the trial court was not free to abrogate the defendant's contractual obligation to pay reasonable attorney fees in connection with the enforcement of a contract, even assuming that the plaintiff's attempt to recover the entire amount pursuant to the contract was "overreaching" due to the plaintiff's own partial breach of the same contract. *St. Hilaire*, 607 A.2d at 906. We reasoned that there was "no indication that plaintiff's actions caused defendant's delay in payment or precluded it from tendering the undisputed amount." *Id.*

[¶ 26] Similarly, there is no indication that Cheung's actions completely precluded the Wus from paying the amount required on the promissory note. The Wus had numerous other legal avenues available to them to enforce their rights pursuant to the stock purchase agreement other than stopping all payments on the note. We review de novo the terms of the contractual provision for attorney fees. The provision applies in this case given that this is a "legal proceeding arising from or connected with the enforcement of [the] note." By denying Cheung *any* reasonable attorney fees to which he asserted a right pursuant to the terms of the note, when the recoupment or setoff was only forty-four percent of the amount proved to be owed on the note, the court acted beyond its discretion.

[¶ 27] On remand, the trial court should consider the award to Cheung of reasonable attorney fees for his efforts expended in pursuing the amount due on the note, as opposed to fees associated with litigating the amounts the Wus were entitled to recoup or setoff from the amount owed on the note.[3] *See Webber Oil Co. v. Murray*,

---

**3.** Cheung also contends that the court erred by failing to address whether he is entitled to collect attorney fees pursuant to M.R. Civ. P. 37(c), fees generated by the Wus' failure to admit the truth of matters in Cheung's request for admissions. Pursuant to M.R. Civ. P. 37(c), "if the party requesting the admissions thereafter proves the genuineness of ... the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney fees." Cheung applied to the court for an order requiring the

551 A.2d 1371, 1376–77 (Me.1988) (affirming an award of fees to plaintiff for pursuing a claim, but not for defending against the counterclaim); *Lee v. Scotia Prince Cruises, Ltd.*, 2004 ME 24, ¶¶ 9, 14, 843 A.2d 753, 756–57 (affirming an award of fees associated with both claims and counterclaims because all were "inextricably intertwined") (quotation marks omitted).

The entry is:

Judgment vacated in part. Remanded to the District Court for further proceedings consistent with this opinion with respect to the award of attorney fees. In all other respects, the judgment is affirmed.

Wus to pay the reasonable expenses, including attorney fees, incurred in proving the truth of matters which were denied in Cindy's response to the Cheung's request for admissions. The court, however, did not address Cheung's request for attorney fees pursuant to M.R. Civ. P. 37(c). Although the fees generated pursuant to Rule 37(c) may be included in the attorney fees to which Cheung may be entitled pursuant to the terms of the promissory note, on remand the court should also address Cheung's request for attorney fees pursuant to M.R. Civ. P. 37(c).